IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Jennifer Obermeyer, | : | |
| | : | Case No. 1:23-cv-711 |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | Order Granting in Part and Denying in |
| Denis McDonough, in his official | : | Part Motion to Dismiss the Amended |
| capacity as the Secretary of the | : | Complaint and Granting Motion for |
| Department of Veteran Affairs, | : | Leave to Amend Complaint |
| | : | |
| Defendant. | : | |

  This matter is before the Court on the Defendant's Motion to Dismiss the Amended Complaint and Plaintiff's Motion for Leave to Amend Complaint a second time. (Docs. 18, 21.) Plaintiff Jennifer Obermeyer purports to bring employment discrimination claims based on religion, sex, and disability against Defendant Denis McDonough in his official capacity as the Secretary of the Department of Veterans Affairs ("VA"), which constitute claims against the VA itself. The VA moves to dismiss the claims for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Obermeyer filed a Memorandum in Opposition, to which the VA filed a Reply. (Docs. 19, 20.)

  After the Motion to Dismiss the Amended Complaint was fully briefed, Obermeyer moved for leave to file a Second Amended Complaint changing the basis of her disability discrimination claim from the Americans with Disabilities Act ("ADA") to the Rehabilitation Act. The VA opposes Obermeyer receiving a second opportunity to amend her claims.

  For the reasons that follow, the Court will **GRANT IN PART** and **DENY IN PART** the Motion to Dismiss Amended Complaint and **GRANT** the Motion for Leave to Amend the

1

Complaint a second time with restrictions.

I.      **BACKGROUND**

A.      **Factual Allegations in the Amended Complaint**

The factual allegations in the Amended Complaint are assumed to be true for purposes of the Motion to Dismiss. Obermeyer is a physician's assistant employed by the VA at the Cincinnati VA Medical Center. (Doc. 16 at PageID 89.) At all times relevant, her first-level supervisor at the VA was Dr. Charles Young, Chief of Interventional Radiology, and her second-line supervisor was Dr. Vincent Koenigsknecht, Chief of Radiology. (*Id.* at PageID 90.) Obermeyer is a combat veteran suffering from post-traumatic stress syndrome ("PTSD"), which is 70% service-connected. (*Id.*) Dr. Koenigsknecht was aware of Obermeyer's PTSD diagnosis. (*Id.*)

In October 2021, the VA issued VA Notice 22-01, which required all VA employees to receive a complete COVID-19 vaccination series or to obtain an exemption for medical or religious reasons. (*Id.* at PageID 91.) The VA provided instructions on how employees should upload proof of vaccination or a request for religious exemption into the employee portal known as the Light Electric Action Framework ("LEAF"). (*Id.*) Obermeyer, who was raised Catholic and attended a Christian church, had a religious objection to the vaccine. (*Id.* at PageID 90–91.) Obermeyer made multiple inquiries whether she could submit her request for religious exemption using a paper copy of the required forms because the LEAF form included an attestation to which she could not agree. (*Id.* at PageID 91.)

Dr. Koenigsknecht "berated and harassed" Obermeyer about submitting the attestation in the LEAF portal and about masking and testing for COVID-19. (*Id.*) Obermeyer explains four incidents in which Dr. Koenigsknecht, who is larger and approximately five inches taller than

Obermeyer, harassed her. (*Id.* at PageID 93.) In one encounter, which the Court assumes was in August 2021, "Dr. Koenigsknecht challenged her beliefs regarding the vaccine, berating her with questions like, '95 percent of doctors say it's okay to get,' and 'so you think that 95 percent of the doctors are crazy?'" (*Id.* at PageID 91.)[1] Dr. Koenigsknecht did not appear to want a conversation about the topic, and he talked over Obermeyer and did not let her finish her sentences. (*Id.* at PageID 92.) He was assertive and dominant in tone and body language. (*Id.*)

In a second incident in October 2021, Dr. Koenigsknecht questioned Obermeyer's religious convictions, and he again would not allow Obermeyer to answer questions or complete sentences in response. (*Id.*) Obermeyer "felt religious intimidation." (*Id.*) Nonetheless, on October 22, 2021, she submitted a request for religious exemption to Dr. Young that included a request for medical accommodation for the vaccine and testing. (*Id.*) She requested both a religious accommodation to be "exempt from COVID-19 vaccination and testing" and a medical accommodation to have "her own office alone with decreased noise, interruption, and distractions, to leave work as needed for flare-ups or symptoms of PTSD." (*Id.*)[2]

Obermeyer asserted that Dr. Koenigsknecht harassed her at her desk a third time on November 18, 2021 after she made her request for religious exemption. (*Id.* at PageID 93.) He stated she was "on the naughty list" regarding LEAF compliance, insisted that she submit her form through LEAF, and asked her to explain her religious reason for not wanting the vaccine. (*Id.*) He was "physically animated" and "jabbed the air to punctuate his points." (*Id.*) He again

---

[1] The Amended Complaint states that this incident occurred in August 2023, but that appears to be a typographical error. The Amended Complaint allegations generally proceed in chronological order, and the next two incidents which Obermeyer described took place in October and November 2021. (Doc. 16 at PageID 92–93.)

[2] In regard to her religious accommodation request, Obermeyer stated: "I believe at birth, my first breath was God breathing His breath, the breath of the Holy Spirit into my body, which made my body the temple of the Holy Spirit. Because of this, I will not defile my body with unwanted intrusions that are intended to modify my DNA or my immune system." (*Id.* at PageID 93.) She also stated: "Testing me when I am healthy and without symptoms is coercing me to participate in an untruth, which I cannot do. If I have no symptoms, there is no legal basis for me to be tested." (*Id.*)

interrupted when she tried to answer his questions. (*Id.*) Finally, he "came around to the back of [her] desk, standing over her shoulder stating, 'Jen, it's really simple. I don't know what your problem is. Open that up. See it's very simple . . . now click here.'" (*Id.*)

Finally, in a fourth incident, Dr. Koenigsknecht "began harassing Ms. Obermeyer about testing in April of 2022, insisting that she come into his office where he demanded that she sign a formal counseling document that would be punitive in nature." (*Id.* at PageID 94.)

Obermeyer alleged that Dr. Koenigsknecht's harassment made her "physically uncomfortable and cognitively destabilized." (*Id.*) She asserted that he "did not treat other employees, particularly other men, in the same harassing manner." (*Id.*) She alleged that as a result, she "had to utilize extended periods of leave to regain the ability to work without experiencing symptoms of PTSD." (*Id.*) She took several months off and began to see a psychologist to treat her PTSD symptoms. (*Id.* at PageID 94–95.) She still is employed by the Cincinnati VA Medical Center. (*Id.* at PageID 89.)

On an unspecified date or dates, the VA denied at least some of Obermeyer's accommodation requests. As to the religious accommodation request, she asserted that the VA "insisted that she test despite her request for religious exemption." (*Id.* at PageID 93.) She did not explicitly assert whether the VA granted or denied her request to be exempt from taking the COVID-19 vaccine. She implied that her request for an exemption was granted and that she did not take the vaccine because she asserted that she was "subjected to continuous harassment by Dr. Koenigsknecht and others because she could not vaccinate and test because of her religious belief." (*Id.* at PageID 96.)

As to her request for medical accommodation, she asserted that the VA denied her "requests for telework as an accommodation." (*Id.* at PageID 93.) It is unclear whether this

4

request for telework is separate from the request she described to have "her own office alone" and "to leave work as needed for flare-ups or symptoms of PTSD." (*Id.* at 92.) It is unclear whether the VA granted her request to have her own office.

**B.      Procedural History**

Obermeyer filed her initial Complaint against the VA on October 30, 2023. (Doc. 1.) She asserted two claims for relief: (1) Title VII Harassment/Hostile Environment Based on Sex/Religion and (2) Violation of Title VII Religious Discrimination—Failure to Accommodate. (*Id.* at PageID 5–7.) The VA responded with a Motion to Dismiss. (Doc. 12.)

Obermeyer then filed the Amended Complaint substituting McDonough, in his official capacity as the Secretary of the Department of the VA, as the Defendant and adding disability discrimination claims. (Doc. 16.) She asserted three claims for relief in the Amended Complaint: (1) Title VII Harassment/Hostile Work Environment Based on Sex/Religion/Disability; (2) Violation of Title VII Religious Discrimination—Failure to Accommodate; and (3) Americans with Disabilities Act ("ADA")—Failure to Accommodate on the Basis of Disability. (*Id.* at PageID 94–97.) In response, the VA filed the pending Motion to Dismiss the Amended Complaint. (Doc. 18.)

The VA asserted that Obermeyer lacks standing because she did not suffer a cognizable injury and that her three purported causes of action fail to state claims upon which relief can be granted. Obermeyer filed a Memorandum in Opposition on June 10, 2024, to which the VA filed a Reply on June 24, 2024. (Docs. 19, 20.) Obermeyer admitted in her Memorandum in Opposition that her ADA claim failed as a matter of law because the law does not apply to federal employees. She requested leave to file a second amended complaint substituting a Rehabilitation Act claim for the ADA claim. (Doc. 19 at PageID 118.) She did not attach a

5

proposed second amended complaint at that time. The VA, in its Reply, asked for dismissal of the ADA claim and asserted that any attempt to add a Rehabilitation Act claim would be untimely. (Doc. 20 at PageID 125–126.)

More than two weeks later, Obermeyer filed the Motion for Leave to Amend Complaint and for the first time attached a proposed Second Amended Complaint. (Doc. 21.) The proposed Second Amended Complaint substitutes a Rehabilitation Act claim for the ADA claim in Count 3. It also adds three new factual allegations about Obermeyer's alleged accommodation request to work from home or telework. (Doc. 21-2 at PageID 136, 138–141.) The VA opposes the Motion. (Doc. 22.)

## II. ANALYSIS

The Court will begin by first examining a preliminary issue of standing. Then the Court will examine whether Obermeyer has stated sufficient claims for relief in the Amended Complaint. The Court will discuss whether Obermeyer should be permitted to file the proposed Second Amended Complaint when it examines the disability discrimination claim in Count 3.

### A. Rule 12(b)(1) Lack of Subject-Matter Jurisdiction—Standing

Federal Rule of Civil Procedure 12(b)(1) authorizes a dismissal of a complaint where the Court lacks jurisdiction over the subject matter of the complaint. The plaintiff has the burden of establishing the Court's jurisdiction when such a dismissal motion is filed under Rule 12(b)(1). *See Rogers v. Stratton Industs., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986). "Whether a party has standing is an issue of the court's subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017). Standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable

judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016). An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up).

The VA argues that Obermeyer lacks standing because employees who receive exemptions from COVID-19 vaccination mandates do not have standing to bring suit challenging the mandate. *See Savel v. Metrohealth Sys.*, 96 F.4th 932, 939–940 (6th Cir. 2024) (implying that an employee granted a religious exemption from the COVID-19 vaccine did not suffer cognizable injury); *Bare v. Cardinal Health, Inc.*, No. 22-5557, 2023 WL 395026, at *2 (6th Cir. Jan. 25, 2023) (finding that employee granted medical exemption from COVID vaccine lacked injury for purposes of standing inquiry). However, the need to apply for an exemption to the COVID-19 vaccine mandate is not Obermeyer's basis for standing. Obermeyer alleged that she suffered a flare-up of her PTSD condition, requiring her to take several months off work and seek medical treatment, because the VA denied her requests for accommodation regarding testing and telework and because Dr. Koenigsknecht harassed her. (Doc. 16 at PageID 95–97.) The VA does not that argue that these allegations are insufficient to establish constitutional standing. The Court will not dismiss the Amended Complaint for lack of standing.

**B.     Rule 12(b)(6) Failure to State a Claim Upon Which Relief Can Be Granted**

    **1.     Standard of Law**

Obermeyer also moves to dismiss each of the three causes of action in the Amended Complaint on the grounds that Obermeyer has failed to state a claim upon which relief can be granted. Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To

7

withstand a motion to dismiss, a complaint must comply with Federal Rule of Civil Procedure 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–678 (2009) (quoting Rule 8(a)(2)).

A complaint must include sufficient facts to state a claim that is plausible on its face and not speculative. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Mere "labels and conclusions [or] a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. A complaint must contain "either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *DiGeronimo Aggregates, LLC v. Zemla*, 763 F.3d 506, 509 (6th Cir. 2014) (citation omitted). However, it "does not need detailed factual allegations" or "heightened fact pleading of specifics." *Twombly*, 550 U.S. at 555, 570. A district court examining the sufficiency of a complaint must accept well-pleaded facts as true, but not legal conclusions or legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678–679; *DiGeronimo Aggregates*, 763 F.3d at 509.

    2.    **Count 1: Harassment/Hostile Work Environment**

The Court will address each cause of action in turn. In Count 1, Obermeyer alleged that Dr. Koenigsknecht harassed her based on her sex, religion, and/or disability and that the harassment created a hostile work environment in violation of Title VII and presumably the ADA.[3] A hostile work environment claim generally requires a plaintiff to prove that she was a

---

[3] Obermeyer explicitly cites to only Title VII as the source of her Count 1 claims, but disability is not a protected category under Title VII. (Doc. 94 at PageID 94.) She separately brings a claim for a failure to accommodate disability discrimination claim under the ADA in Count 3, so the Court assumes she intended to bring this subclaim

member of a protected class, she was subjected to unwelcome harassment, the harassment was based on her membership in the protected class, the harassment created a hostile work environment, and the employer is liable. *Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 307 (6th Cir. 2016). The VA moves to dismiss this cause of action on two grounds.

First, the VA argues that, as a matter of law, Obermeyer has not asserted harassing conduct that was so severe and pervasive to create a hostile work environment. A hostile work environment exists when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Rock-Tenn Servs., Inc.*, 813 F.3d at 309 (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993)). The workplace must be both objectively and subjectively hostile. *Id.*; *see also Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833, 841 (6th Cir. 2024), *cert. denied*, 2024 WL 3089575 (U.S. June 24, 2024). Courts must consider the totality of circumstances in making this assessment including "the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's performance." *Ogbonna-McGruder*, 91 F.4th at 840 (cleaned up). As to the frequency of the harassment, the Sixth Circuit has instructed that isolated incidents are not actionable "unless extremely serious" and that four incidents in a two- and one-half-year period do not constitute severe or pervasive harassment. *Id.* at 841.

The Court will not dismiss Count 1 on this basis, though it presents a close question. Obermeyer alleged that she endured harassment and intimidation at the hands of Dr. Koenigsknecht on at least four separate occasions in less than one year about her decision to seek an exemption from the COVID-19 vaccine requirement. Obermeyer did not allege that

---

under the ADA as well. The basis for the claim is immaterial ultimately because, as explained above, she has not plausibly alleged that she was harassed on the basis of her PTSD.

Dr. Koenigsknecht used foul language, verbally threatened her with violence, or touched her inappropriately. On the other hand, she alleged that there was a power differential between them in both terms of their physical size and their position of authority at the VA. She asserted that Dr. Koenigsknecht was physically animated when he spoke, stood over her when she was seated at her desk, and used body language suggestive of domination during the incidents. (Doc. 16 at PageID 92–94.) She asserted that he cut off her sentences and her attempts to answer his questions. (*Id.* at 92–93.) The Court's analysis is guided by the Sixth Circuit's statement that "[w]hether harassment was so severe and pervasive as to constitute a hostile work environment" is "quintessentially a question of fact." *Rock-Tenn Servs.*, 813 F.3d at 310 (citation omitted). The only issue before the Court is whether Obermeyer has asserted a plausible claim for relief. The Court finds Obermeyer has alleged sufficient facts to plead that Dr. Koenigsknecht's harassment created a hostile work environment.

Obermeyer also must plead facts that plausibly suggest that the harassment was based on her sex, religion, or disability for each of those subclaims to withstand the dismissal motion. Title VII prohibits discrimination "because of [an] individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A claim for Title VII must be dismissed if the plaintiff's allegations do not create a reasonable inference that the harassment was "because of" her membership in a protected group. *See Ogbonna-McGruder*, 91 F.4th at 839 (stating that the plaintiff must allege her harassment was based on her protected class); *Pike v. Hardin Cnty. Water Dist. No. 2*, No. 3:23-CV-42-DJH-RSE, 2024 WL 1199439, at *2–3 (W.D. Ky. Mar. 20, 2024) (dismissing complaint where plaintiff made "no connection between [her] sex and the defendants' purportedly discriminatory conduct"). Obermeyer has met this standard only as to religion. She alleged that all of Dr. Koenigsknecht's questions and harassment arose from the

10

fact that she requested a religious exemption from the COVID-19 vaccine and testing.  That is sufficient at the pleading stage to raise an inference that the harassment was based on her religious belief.

On the other hand, Obermeyer did not allege facts that make it plausible that Dr. Koenigsknecht harassed her *because of* her sex or disability status.  Obermeyer did not assert that Dr. Koenigsknecht used language that was derogatory towards women.  She did not assert that he made any sexually-charged comments or gestures.  Instead, she asserted only that Dr. Koenigsknecht did not harass any men, but that is not sufficient in the context of her Amended Complaint allegations.  (Doc. 16 at PageID 94.)  She did not assert that any men requested a vaccine exemption.  She did not assert that Dr. Koenigsknecht harassed any other employees at all.  The allegation that Dr. Koenigsknecht harassed her, combined with the fact that she is a woman, is not sufficient to plausibly allege that the harassment was because of her sex.

The analysis is the same for the disability harassment subclaim.  Obermeyer asserted that Dr. Koenigsknecht knew about her PTSD condition.  (*Id.*)  She further asserted that he used her PTSD against her "by making her physically uncomfortable and cognitively destabilized." (*Id.*)  Though such allegations are disturbing if true, they do not raise a plausible inference that Dr. Koenigsknecht harassed her *because* she had PTSD.  She did not allege that he made any derogatory comments about her PTSD or raised the issue in any way.  Again, the harassment solely revolved around her requests for exemptions from the vaccine and testing requirements.  Obermeyer asserted no facts supporting a plausible claim of harassment based on her disability.

The Court will dismiss the harassment/hostile work environment claim to the extent that it is based on her sex or disability status.  The Court will not dismiss the harassment/hostile work environment claim to the extent it is based on religion.

11

### 3. Count 2: Violation of Title VII Religious Discrimination—Failure to Accommodate

Obermeyer asserted in Count 2 that she "was subjected to continuous harassment by Dr. Koenigsknecht and others because she could not vaccinate and test because of her religious belief, and because she is a woman." (Doc. 16 at PageID 96.) She also asserted that Dr. Koenigsknecht "treated others more favorably" than her, but she does not explain how except to imply others were not subject to harassment. (*Id.*) Finally, she asserted that "[t]he VA denied her request for accommodation regarding testing, denied her request for telework." (*Id.*) Because harassment is the basis of Count 1, the Court focuses only on the failure to accommodate allegations in Count 2.

Title VII makes it unlawful for an employer to discriminate against an individual "with respect to his compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). To discriminate means to treat a person worse with respect to an identifiable term or condition of employment. *Muldrow v. City of St. Louis, Missouri*, 144 S. Ct. 967, 974 (2024). Title VII does not impose a threshold that the worse treatment must be significantly worse. *Id.* "[T]he rule for disparate-treatment claims based on a failure to accommodate a religious practice is straightforward: An employer may not make an applicant's religious practice, confirmed or otherwise, a factor in employment decisions." *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773 (2015). Employers must accommodate the religious practice of their employees unless doing so would impose an "undue hardship on the conduct of the employer's business." *Groff v. DeJoy*, 600 U.S. 447, 453–454 (2023) (quoting 42 U.S.C. § 2000e(j)). An undue hardship is shown "when a burden is substantial in the overall context of an employer's business." *Id.* at 468. A failure to accommodate claim for religious discrimination under Title VII ultimately requires an employee to prove: "(1) that the employee

holds a sincere religious belief that conflicts with an employment requirement, (2) that the employee informed the employer about the conflict, and (3) that the employee was discharged or disciplined for failing to comply with the requirement." *Stanley v. ExpressJet Airlines, Inc.*, 808 F. App'x 351, 355–356 (6th Cir. 2020).

Obermeyer's claim fails because she has not plausibly asserted that she was discharged, disciplined, or subjected to an adverse employment action. Obermeyer was still employed by the VA at the time she filed the Amended Complaint in May 2024, so her employment was not terminated. She did not assert that she was suspended or demoted or lost any privileges of her employment. Instead, she alleged that she was compelled to take a leave of absence to address her PTSD flare-up so that she was mentally fit to perform her job duties again.[4] (Doc. 16 at PageID 95, 97.) To be clear, she did not allege that the VA required her to take a leave of absence. Rather, the reasonable inference from the Complaint allegations is that she requested and was granted a leave of absence to recover after which time she returned to her position at the VA. She also did not allege whether she was paid salary or benefits during her leave of absence.

The problem is that Obermeyer does not identify any cases in which the *voluntary* taking of a leave of absence, whether paid or unpaid, was held to constitute an adverse employment action. District courts have noted that the Sixth Circuit "has not directly addressed the issue of whether unpaid medical leave is an *adverse* employment action." *Squiers v. Washtenaw Cnty.*, 2023 WL 3506422, at *4 (E.D. Mich. May 17, 2023), *reconsideration denied,* No. 21-11956, 2023 WL 4565463 (E.D. Mich. July 17, 2023); *see also Kelly v. Graphic Packaging Int'l, LLC*,

---

[4] Obermeyer also pleads that in April 2022, Dr. Koenigsknecht "insist[ed] that she come into his office where he demanded that she sign a formal counseling document that would be punitive in nature." (Doc. 16 at PageID 94.) She did not allege that she actually signed the document. She did not allege that she received any punitive discipline or that the terms or conditions of her employment were affected. "A letter of reprimand is not a materially adverse employment action unless accompanied by a loss such as demotion or salary reduction." *Agrawal v. Montemagno*, 574 F. App'x 570, 576–577 (6th Cir. 2014). Without more, Obermeyer's formal counseling allegation is not sufficient to constitute an adverse action even at the pleading stage.

No. 1:21-CV-772, 2024 WL 1431961, at *15 (W.D. Mich. Apr. 3, 2024) (same), *appeal filed* (6th Cir. May 6, 2024).

The *Squiers* court relied on opinions from other circuit courts of appeal to hold that involuntary unpaid leave was not an adverse employment action. 2023 WL 3506422, at *4 (citing *Clark v. Charter Commc'ns L.L.C.*, 775 F. App'x 765, 767 (5th Cir. 2019) (rejecting a plaintiff's argument that she suffered an adverse action because she was forced to take unpaid leave during which she lost insurance benefits and access to healthcare) and *Freelain v. Vill. of Oak Park*, 888 F.3d 895, 901 (7th Cir. 2018) (stating that "granting an employee's FMLA rights to unpaid leave consistent with the statute's explicit terms cannot constitute a retaliatory adverse action under the FMLA itself or under the ADA, at least without evidence that his employer deviated from its normal paid leave practices and targeted him for unpaid leave because he asserted his statutory rights.")). The court in *Kelly* called it a "close question" whether being placed on involuntary unpaid medical leave lasting two years could constitute an adverse employment action and decided the case on other grounds. 2024 WL 1431961, at *15–16. Neither case supports the proposition that an employee who *voluntarily* takes an unpaid leave of absence and then returns to her position has suffered an adverse employment action. The Court concludes that Obermeyer has not alleged a religious discrimination claim because she has not alleged that the VA took an adverse employment action against her in connection to her request for exemptions from the vaccination and testing requirements. Quite simply, she has not met her "straightforward" burden to state a claim that her employer made her "religious practice, confirmed or otherwise, a factor in employment decisions." *Abercrombie & Fitch Stores*, 575 U.S. at 773.

Contrary to Obermeyer's argument, *Rock-Tenn Services* does not support her position.

14

The plaintiff in *Rock-Tenn Services* requested and was granted leave from work after he was sexually harassed on the job. 813 F.3d at 304. At trial, he won a jury verdict on his hostile work environment claim, not on a Title VII discrimination claim. *Id.* at 306. In fact, the district court had granted summary judgment to the employer on the plaintiff's constructive discharge discrimination claim. 813 F.3d at 306. As such, *Rock-Tenn Services* does not stand for the proposition that an employee's decision to take a leave of absence constitutes an adverse employment action for purposes of a discrimination claim. Moreover, like the plaintiff in *Rock-Tenn Services,* Obermeyer is allowed to proceed on her claim that Dr. Koenigsknecht's harassment created a hostile work environment. The Court holds only that her vague allegations do not support a separate claim for Title VII religious discrimination. The Court will dismiss her claim for Title VII religious discrimination arising from an alleged failure to accommodate.

    **4.    Count 3: Americans with Disabilities Act—Failure to Accommodate on the Basis of Disability**

In her third claim in the Amended Complaint, Obermeyer asserted a claim for failure to accommodate disability discrimination in violation of the ADA. The VA moves to dismiss for failure to state a claim upon which relief can be granted. The Court will not set forth the legal standards for a failure to accommodate claim under the ADA because Obermeyer concedes that she cannot bring an ADA claim against her federal government employer. (Doc. 19 at PageID 118.) The Rehabilitation Act of 1973, 29 US.C. § 794, is a federal employee's exclusive remedy for employment-related disability discrimination claims. *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007).

After the Motion to Dismiss was fully briefed, Obermeyer filed her Motion for Leave to Amend Complaint a second time. She seeks to substitute a Rehabilitation Act claim for the ADA claim. Of course, Obermeyer already exercised her Federal Rule of Civil Procedure

15(a)(1)(B) right to amend her initial Complaint as a matter of course in response to the initial Motion to Dismiss. (Docs. 12, 16.)[5]

The VA opposes the Motion for Leave to Amend Complaint a second time, but its arguments in opposition are puzzling. The VA suggests that Obermeyer failed to attach a proposed Second Amended Complaint to the Motion, but that is inaccurate. The Proposed Second Amended Complaint is filed as CM/ECF Doc. 21-2. The VA also asserts in passing that Obermeyer never exhausted the putative Rehabilitation Act claim, but it does not explain that argument in any detail.[6]

The Court will give Obermeyer a third and final attempt to state her claims. Within two weeks of the date of this Order, she must file a revised Second Amended Complaint with only the Title VII harassment/hostile environment claim based on religion and the Rehabilitation Act disability discrimination claim. She must omit any Title VII claim for harassment/hostile work environment based on sex and disability, any Title VII claim for religious discrimination based on failure to accommodate, and any ADA claim. This case must proceed forward without further delay.

### III.  CONCLUSION

For the foregoing reasons, the Motion to Dismiss the Amended Complaint (Doc. 18) is **GRANTED IN PART** and **DENIED IN PART** and the Plaintiff's Motion for Leave to Amend Complaint (Doc. 21) a second time is **GRANTED** with restrictions. Obermeyer's Title VII

---

[5] In fact, the Amended Complaint was untimely in that it was filed twenty-two days after service of the Motion to Dismiss. On the twenty-first day after service of the Motion to Dismiss, Obermeyer's attorney inexplicably filed a pleading captioned "Amended Complaint" from a case involving different parties that appears to be pending in the Central District of California. He filed the Amended Complaint for this case only after the Clerk of Court pointed out the error.

[6] Exhaustion of administrative remedies is a prerequisite to filing a Rehabilitation Act claim. *See Smith v. U.S. Postal Serv.*, 742 F.2d 257, 262 (6th Cir. 1984); *Coats v. McDonough*, No. 3:20-CV-00298, 2021 WL 5846550, at *9 (M.D. Tenn. Dec. 9, 2021).

claim for harassment/hostile work environment based on sex and disability, her Title VII claim for religious discrimination based on failure to accommodate, and her ADA disability discrimination claim based on failure to accommodate are **DISMISSED**. Obermeyer can proceed forward on her Title VII claim for harassment/hostile work environment based on religion. Obermeyer has leave to file within two weeks of the date of this Order a revised Second Amended Complaint restating the Title VII claim for harassment/hostile work environment based on religion and adding the proposed Rehabilitation Act disability discrimination claim for failure to accommodate.

    **IT IS SO ORDERED.**

                                          BY THE COURT:

                                          S/Susan J. Dlott
                                          Susan J. Dlott
                                          United States District Judge